**POSTED TO THE WEBSITE**

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | Case No. 22-20832-A-7 |
| IN RE DANIEL STEWART, | |
| Debtor. | |

| | |
|---|---|
| MELANIE J. DECKER et al., | Adv. No. 22-2046-A |
| | CLH-2 |
| Plaintiff, | |
| | **MEMORANDUM** |
| v. | |
| DANIEL STEWART, JR. | |
| Defendant. | |

Argued and submitted on November 21, 2023

at Sacramento, California

Honorable Fredrick E. Clement, Bankruptcy Judge Presiding

Appearances:   Charles L. Hastings, Natalie A. Ron and
Karen J. Calderon, Law Offices of Hastings
and Ron and A. Peter Rausch, Jr., Law
Offices of A. Peter Rausch, Jr. for the
plaintiffs; Daniel Stewart, Jr. Pro se.

1    Issue preclusion bars a party from re-litigating an *identical*

2    issue previously decided between them.  Plaintiff trust beneficiaries

3    obtained a state court judgment against defendant for $1.6 million for

4    intentional breach of his fiduciary duties and for self-dealing.  They

5    now seek to except that debt from discharge under 523(a)(4) based on

6    the bad faith or immoral conduct language in *Bullock v. BankChampaign,*

7    *N.A.*, 569 U.S. 267, 273-274, (2013).  Are the issues in the two

8    actions identical?

9    **I.    FACTS**

10    This action arises out of the administration of the testamentary

11    trust of Russell H. Decker, Jr., and Lynda J. Decker ("the settlors

12    Decker").  The disputants are: (1) four of the settlors Deckers'

13    grandchildren and the now trustee of the Deckers' trust (collectively

14    "the plaintiffs"); and (2) the settlors Deckers' son-in-law and the

15    plaintiffs' father and stepfather, Daniel J. Stewart Jr. ("the

16    defendant").

17    **A.    The Decker Trust**

18    In 2008, Russell H. Decker, Jr. and Lynda J. Decker executed a

19    joint revocable living trust.  Second Amended TEDRA[1] Petition for

20    Removal of Trustee, Recovery of Decedent's Assets, Damages, and

21    Attorney's Fees at Pls. Trial Ex. G ¶ 3.1, *Decker v. Stewart*, No. 20-

22    4-00041-16 (Superior Court Dec. 9, 2020).[2]  Kimberly Decker Stewart,

---

[1] "TEDRA" is an acronym for the Trust and Estate Resolution Act. Wash. Rev. Code 11.96A.010 et seq. (1999).

[2] The facts are taken from the trial documents.  Excepting objections for hearsay and relevance, the parties stipulated to the admissibility of all lodged trial documents.  Stipulation, ECF No. 70, October 10, 2023.  The plaintiffs' arguments in favor of issue preclusion are supported, if at all, by the trial exhibits (including the underlying state court judgment rendered in the State of Washington).  At oral argument, the defendant objected to the court's consideration of the Washington State Court judgment as hearsay. That objection is overruled.  Fed. R. Evid. 801(c); *U.S. v. Boulware*, 384 F.3d 794, 805-806 (9th 2004) ("A prior judgment is not hearsay, however, to

their daughter, was the sole beneficiary. *Id.* at ¶ 3.2. The trust
provided that if Kimberly Decker Stewart died prior to the
distribution of the assets held in trust that the remaining trust
assets be distributed to her issue per stirpes. *Id.* at ¶ 3.3.
Kimberly Decker Stewart was the trustee of the settlors Decker' trust.
*Id.* at § 3.8.

The trust provided that if Kimberly Decker Stewart died prior to
distribution of trust assets that any undistributed trust assets would
be distributed to her children.

> In the event of the death of Kimberly Dawn Decker before
> the complete distribution of her trust share, the trust
> shall terminate, and our Trustee shall distribute and
> deliver the remaining balance of her trust share pursuant
> to Kimberly Dawn Decker's limited power of appointment
> under Section 3 of this Article [Eleven]. If such limited
> power of appointment is unexercised, our Trustee shall
> distribute and deliver the remaining balance of her trust
> for the benefit of Kimberly Dawn Decker's descendants, if
> any, per stirpes, in accordance with the provisions of the
> paragraph immediately following...

Pls. Trial Ex. A 11-2.

The "power of appointment" described in § 3 of the trust contains
specific provisions limiting its exercise; it may be exercised by a
beneficiary's last will and testament but only: (1) by "specifically
referring to and exercising this power of appointment"; (2) in favor
of "our [the settlors Decker] then living descendants"; and (3) as
applied to that beneficiary's "separate share [of trust assets] as it
exists at the death of such beneficiary." Pls. Trial Ex. A 11-6-11-7.

**B.   The Kimberly Decker Stewart Will**

Kimberly Decker Stewart was married to defendant Stewart. During

---

the extent it is offered as legally operative verbal conduct that determined
the rights and duties of the parties"); *U.S. v. Sine*, 493 F.3d 1021, 1036
(9th 2007).

her lifetime, she executed a will.  *Id.* at § 3.7.  Her will named her spouse as her executor and left her property to her spouse, and her children.  *Id.* at ¶¶ 3.9-3.10; Pls. Trial Ex. B Art. IV, VIII, IV. Her will provided:

Article III

I intend to devise and bequeath all property of which I may be seized or possessed at the time of my death, including property acquired before or after the execution of this Will, and any property over which at the time of my decease I have the power of disposition.

...

Article IV

I nominate, constitute[,] and appoint my husband, Daniel Stewart, Jr., as my Executor of this, my LAST WILL AND TESTAMENT, to serve without requirement of bond or other security.

...

Article VII

I give said Executor or his alternates the fullest power and authority in all matters and questions and to do all acts which I might or could do if living, including, but without limitation, complete power and authority to invest, sell, mortgage, lease, and dispose of and distribute in kind, all property, real and personal, at such times and upon such terms and conditions as she or he may deem advisable.

Article VIII

All of my property, real and person, wherever located and whatever nature, in which at that date I have an interest [,] or which stands in my name or in my name and the name of my husband, including property held of record in joint tenancy, is our community property, except as outlined in more specificity below in Article IX.  I hereby confirm to my husband his vested interest in and to our community property.

Article IX

The residue of my property, real and personal, wherever located and of whatever nature, which I now own or hereafter acquire, I give, devise[,] and bequeath as follows:

4

1  I am the Trustee of The Decker Living Trust, Dated July 31,
2  2008.  In the event that my death occurs before
   distribution of The Decker Living Trust, the entirety of my
   estate whether community or separate in nature, shall be
3  distributed to my husband.  In the event of my death after
   the distribution of the Decker Living Trust, all of my
4  community property and separate property acquired prior to
   the distribution of the Decker Living Trust shall be
5  distributed to my husband and all property or interest
   acquired by me from The Decker Living Trust, shall be
6  distributed to my adoptive children as follows: Melanie
   Juliene Decker: 35%; Stephen Ramiro Decker: 25%; Lauren
7  Marie Decker: $25%; [and] Cassandra Raylene Decker: 15%...

8  Pls. Trial Ex. B 2-4.

9  Kimberly Decker Stewart died and her husband, defendant Stewart,

10 was appointed the personal representative of her estate.  Second

11 Amended TEDRA Petition for Removal of Trustee, Recovery of Decedent's

12 Assets, Damages, and Attorney's Fees at Pls. Trial Ex. G at ¶¶ 3.11-

13 3.12.  Since Kimberly Decker Stewart was unable to act as the trustee

14 of her parents' trust, defendant Stewart appointed himself trustee of

15 the settlors Deckers' trust.  *Id.* at ¶ 3.15.  Having wrongfully taken

16 control of the settlors Deckers' trust, he then engaged in a series of

17 self-dealing transactions with the trust, all to the detriment of the

18 plaintiffs herein.  *Id.* at ¶¶ 3.16-3.35.

19 Dissatisfied with Stewart's handling of the trust, the plaintiffs

20 herein brought a Trust and Estate Resolution Act petition against him.

21 Petition and Second Amended TEDRA Petition for Removal of Trustee,

22 Recovery of Decedent's Assets, Damages, and Attorney's Fees at Pls.

23 Trial Exs. C and G ¶ 3.1, *Decker v. Stewart*, No. 20-4-00041-16

24 (Superior Court Dec. 9, 2020).  Ultimately, the state court removed

25 defendant Stewart as the trustee of the settlors Deckers' trust and

26 awarded the petitioners $1.6 million in damages.  *Id.* at Exs. O, P &

27 Q.  In doing so, the Washington state court made very specific factual

28 findings:

...

The four Petitioners [plaintiffs herein] are the rightful beneficiaries of the Trust, and neither [Daniel] Stewart [Jr.] nor [Beverly] Boss [Stewart's present spouse] are beneficiaries of the Trust.

The Trust granted Kimberly Decker Stewart a limited power of appointment, which prohibited her from designating Daniel Stewart, Jr. as beneficiary under the Trust.

Kimberly Decker Stewart left a Last Will and Testament which demonstrated her intent to preserve the Trust assets for her children.

Stewart failed to perform an accounting of the Trust assets.

Stewart failed to maintain financial records for the Trust.

Stewart engaged in self-dealing by using his power as guardian of the minor children of Kimberly Decker Stewart to appoint himself as Successor Trustee of the Trust and Trustee of the four beneficiary trusts.

*Stewart engaged in self-dealing by residing in the Trust-owned real estate in Port Hadlock.*

*Stewart engaged in self-dealing by utilizing Trust assets for his own benefit, including transferring real property located at 3526 and 3546 Oak Bay Road in Port Hadlock to himself on March 10, 2020.*

*Stewart intentionally liquidated four annuities totaling $1,099,333.70, at a loss of $373,683.80 which were owned by the four irrevocable beneficiary trusts for the benefit of the four Petitioners, and transferred the resulting funds to his personal bank account on March 17, 2020 after he learned that Petitioners intended to initiate this action.*

*OF the $735,000 that was transferred from the Trust account to Stewart's personal account, Stewart spent approximately $723,000 between March 17, 2020[,] and July 21, 2020.*

Stewart has not accounted for the location of any personal property purchased with the Trust funds, nor any cash withdraws [sic] of Trust funds, nor any sums allegedly repudiated from Boss to Stewart.

Stewart is permanently removed as Trustee of the Trust or [sic] any Beneficiary Trusts.

Stewart breached his fiduciary duties to the Trust and Beneficiaries in his role as Trustee, and is personally liable for damages to trust assets in the amount of

1    $1,598,916.20.

2    Stewart is liable for attorney's fees and costs to the
     Petitioners.

3

4    Pls. Trial Ex. O 2:1-3:6 (emphasis added).

5    **II.   PROCEDURE**

6        Thereafter, the plaintiffs filed an involuntary Chapter 7

7    petition against defendant Stewart and this court ordered relief.

8        This adversary proceeding followed; it seeks to except the

9    plaintiff $1.6 million judgment from discharge.  11 U.S.C. §

10   523(a)(4), (a)(6).

11       Discovery has closed and the adversary proceeding was set for

12   trial.

13       On the eve of trial, the plaintiffs filed a motion in limine to

14   preclude defendant Stewart from "re-litigating...the issue of

15   "defalcation while acting as a fiduciary," arguing issue preclusion.

16   Mot. Limine 2:12-16, ECF No. 43.  Defendant Stewart opposes the

17   motion, arguing that no trust existed because a merger occurred since

18   Kimberly Decker Stewart was the sole beneficiary and sole trustee.

19   Resp. p. 1 ¶¶ 3-4, ECF No. 46.

20   **III.  JURISDICTION**

21       This court has jurisdiction.  28 U.S.C. §§ 1334(a)-(b), 157(b);

22   see also General Order No. 182 of the Eastern District of California.

23   Jurisdiction is core.  28 U.S.C. § 157(b)(2)(I); *Carpenters Pension*

24   *Trust Fund for Northern Calif. v. Moxley*, 734 F.3d 864, 868 (9th

25   2013); *In re Kennedy*, 108 F.3d 1015, 1017 (9th Cir. 1997).  Plaintiffs

26   consent to the entry of final orders and judgments by this court; the

27   defendant does not so consent.  28 U.S.C. § 157(b)(3); *Wellness Int'l*

28   *Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 1945-46 (2015).  Scheduling

Order § 2.0, ECF No. 12.

**IV.   LAW**

    **A.   Motions in Limine**

    The law of motions in limine is well-known to this court.

    A motion in limine is a request for guidance on an evidentiary issue. *Hays v. Clark County*, 2008 WL 2372295 * 7 (Nev. 2008). Among the issues that may be raised is res judicata. *Id.*; *Hamilton v. Wilmms*, 2016 WL 1436407 (E.D. Cal. 2016).

    As one court summarized the law applicable to motions in limine: 'A motion in limine is a request for the court's guidance concerning an evidentiary question. Judges have broad discretion when ruling on motions in limine. However, a motion in limine should not be used to resolve factual disputes or weigh evidence. To exclude evidence on a motion in limine the evidence must be inadmissible on all potential grounds. Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.' *Hays*, 2008 WL 2372295 at 7. internal citations and quotation marks omitted).

*In re Patacsil*, No. 20-23457-A-7, 2023 WL 3964908, at *2 (Bankr. E.D. Cal. June 9, 2023).

    **B.   Section 523(a)(4)**

    "In most instances, Chapter 7 debtors are entitled to the forgiveness—in bankruptcy parlance, discharge--of their pre-petition debts. 11 U.S.C. 727. Some debts are excepted from discharge. 11 U.S.C. 523(a)." *In re Zhiry*, No. 21-22759-A-7, 2023 WL 2530252, at *1 (Bankr. E.D. Cal. Mar. 14, 2023).

    Among the excepted debts are those described in § 523(a)(4). "A discharge under section 727, 1141, 1192 1 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— ... for fraud or defalcation *while acting in a fiduciary capacity*, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

    The sine qua non for application of § 523(a)(4) is that the debt

from the defendant to the plaintiff arose while the defendant was acting in a fiduciary capacity. Even if a debt exits, in order to prevail in a 523(a)(4) action, the aggrieved creditor must prove that the debtor was acting in a fiduciary capacity and, while doing so, committed fraud or defalcation. *In re Stanifer*, 236 B.R. 709, 713 (9th Cir. BAP 1999); *In re Honkanen*, 446 B.R. 373, 378 (9th Cir. BAP 2011).

Federal--not state--law defines whether a fiduciary relationship exists. *In re Berman*, 629 F.3d 761, 767-768 (7th Cir. 2011); *In re Nail*, 446 B.R. 292, 299-300 (8th Cir. BAP 2011). The definition of fiduciary capacity in the context of § 523(a)(4) is narrow.

> Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity." The definition of "fiduciary capacity" under § 523(a)(4) is a question of federal law. We have previously held that "[t]he broad, general definition of fiduciary—a relationship involving confidence, trust and good faith—is inapplicable in the dischargeability context." As a result, we have adopted a narrow definition of "fiduciary" for purposes of § 523(a)(4): '*T]he fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt.*'

*In re Cantrell*, 329 F.3d 1119, 1125 (9th Cir. 2003) (internal citations omitted) (emphasis added).

**C.   Issue Preclusion**

The law of issue preclusion is well-settled and well-known to this court. "In federal courts, the preclusive effect of a state court judgment is decided by the law of the state in which the judgment was rendered." *In re Javahery*, No. 2:14-BK-33249-DS, 2017 WL 971780, at *5 (B.A.P. 9th Cir. Mar. 14, 2017), aff'd, 742 F. App'x 307 (9th Cir. 2018), citing *Garden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995).

1    Since the underlying action occurred in the State of Washington,

2 that state's law provides the rule of decision.  The State of

3 Washington has a well-developed body of authority regarding issue

4 preclusion:

5       We have developed a four-part test to determine whether a
        previous litigation should be given collateral estoppel
6       effect in a subsequent litigation. The party asserting
        collateral estoppel must prove: (1) the issue decided in
7       the prior adjudication is identical to the one presented in
        the current action, (2) the prior adjudication must have
8       resulted in a final judgment on the merits, (3) the party
        against whom collateral estoppel is asserted was a party or
9       in privity with a party to the prior adjudication, and (4)
        precluding re[-]litigation of the issue will not work an
10      injustice on the party against whom collateral estoppel is
        to be applied. A court may apply collateral estoppel only
11      if all four elements are met.

12 *Clark v. Baines*, 150 Wash.2d 905, 913 (2004) (internal citations

13 omitted).

14    Moreover, in determining whether to apply issue preclusion, the

15 party asserting its applicability shoulders a heavy burden.

16      The party seeking to employ issue preclusion bears the
        burden of showing its applicability. *Vella v. Hudgins*, 20
17      Cal. 3d 251, 257 (1977). In deciding this issue, the court
        may consider the entire record, including the rendering
18      court's Statement of Decision. Restatement (Second) of
        Judgments § 27 cmt. f (1982); *In re Lopez*, 367 B.R. at 105
19      (statement of decision); *Grenier v. Roback (In re Grenier)*,
        BAP No. NC-14-1396-KiTaD, 2015 WL 3622712, at *2-3, *7 (9th
20      Cir. BAP June 10, 2015) (same).

21 *In re Javahery*, 2017 WL 971780, at *5.

22    Even if the circumstances would support the application of the

23 doctrine of issue preclusion, "reasonable doubts about what was

24 decided in a prior judgment are resolved against applying issue

25 preclusion."  *In re Lopez*, 367 B.R. 99, 108 (B.A.P. 9th Cir. 2007).

26      If available, the decision to apply issue preclusion falls
        within the broad discretion of the trial court. *Parklane
27      Hosiery Co. v. Shore*, 439 U.S. 322, 331 & nn. 14-16 (1979);
        *In re Lopez*, 367 B.R. at 107 (applying California law).
28      That decision always involves "a measure of discretion and

10

flexibility." *In re Lopez*, 367 B.R. at 107 (citing
Restatement (Second) of Judgments, Title E, Introductory
Note (1980)); Restatement (Second) Judgment § 28
(specifying circumstances where application may not be
appropriate).

*In re Javahery*, 2017 WL 971780, at *10.

**V.   DISCUSSION**

    **A.   Debt**

      The existence of a debt in an adversary proceeding under 11
U.S.C. 523(a) is, in most instances, proper.  *See e.g. In re Patacsil*,
No. 20-23457-A-7, 2023 WL 2278596, at *4 (Bankr. E.D. Cal. Feb. 28,
2023), citing 2 *McCormick on Evidence* § 298 (8th July 2022).  Here,
the debt has been reduced to judgment.  That judgment is properly
before this court and satisfies all of the requirements for
application of Washington law on issue preclusion.  *Clark v. Baines*,
150 Wash.2d 905, 913 (2004).  That judgment is in favor of the
plaintiffs, and against the defendant Stewart in the amount of
$1,631,266.10.  Judgment at Pls. Trial Ex. Q, *Decker v. Stewart*, No.
20-4-00041-16 (Superior Court July 30, 2021).  As a result, the
doctrine of issue preclusion bars re-litigation of the existence, and
amount, of the debt between the parties.

    **B.   Section 523(a)(4)**

      The mere fact that another court issued a judgment that defendant
Stewart breached a fiduciary duty does not bind this court with
respect to 523(a)(4).  *Brown v. Felsen*, 442 U.S. 127 (1979)
(settlement); *Archer v. Warner*, 538 U.S. 314 (2003) (settlement); *In
re Comer*, 723 F.2d 737, 740 (9th Cir. 1984) (claim preclusion is
inapplicable to discharge exception proceedings).  In contrast, issue
preclusion is applicable in discharge exception proceedings.  *Id.*

11

### 1. Fiduciary capacity

Section 523(a)(4) excepts from discharge, debt incurred by embezzlement, larceny, or fraud or defalcation while acting in a fiduciary capacity. 11 U.S.C. 523(a)(4). For actions prosecuted under the third exception of 523(a)(4) the defendant must be "acting in a fiduciary capacity." *In re Stanifer*, 236 B.R. 709, 713 (9th Cir. BAP 1999).

For the purposes of § 523(a)(4), the existence of an express or technical trust gives rise to a fiduciary duty. *Double Bogey, L.P. v. Enea*, 794 F.3d 1047, 1050 (9th Cir. 2015); *In re Cantrell*, 329 F.3d 1119, 1125 (9th Cir. 2003; *In re Lewis*, 97 F.3d 1182, 1185 (9th Cir. 1996).

As applied to issue preclusion, the only issue is issue identity. Here, the Washington state court specifically found the existence of an express trust and that defendant Stewart was acting in a fiduciary capacity. Pls. Trial Ex. O; Wash. Rev. Code § 11.96A.040(2) (2012). Issue preclusion bars defendant Stewart from re-litigating whether an express trust existed and whether he was acting in a fiduciary capacity.[3]

### 2. Defalcation

Section 523(a)(4) requires either: (1) bad faith, moral turpitude or other immoral conduct; or (2) an intentional wrong, i.e., knowledge of the wrong or a conscious disregard by the defendant that he/she is violating a fiduciary duty.

---

[3] Defendant Stewart's merger argument was raised and rejected by the Washington state court. Pls. Trial Ex. F 3:1-25, J 2:9-13, 2:10-24. Moreover, such an argument is fallacious. Kimberly Decker Stewart was never the sole trustee and sole beneficiary. The trust names her descendants as contingent beneficiaries of the trust as to undistributed trust assets. Art. 11 § 1(a)(3).

> *[W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, [defalcation] requires an intentional wrong.* We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. *Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty.*

*Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273-274, 133 S.Ct. 1754, 1759 (2013) (emphasis added).

Ninth Circuit law describes *Bullock* as a three-part test: (1) bad faith, moral turpitude or other immoral conduct; (2) intentional improper conduct and criminally reckless conduct; or (3) conscious disregard or willfully blind to a substantial and unjustified risk. *In re Heers*, 529 B.R. 734, 742-743 (9th Cir. 2015).

Washington state law defines a breach of fiduciary duty, at least insofar as the duty of loyalty is concerned, this way:

(1) A trustee must administer the trust solely in the interests of the beneficiaries.

(2) Subject to the rights of persons dealing with or assisting the trustee as provided in RCW 11.98.105, *a sale, encumbrance, or other transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or which is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable* by a beneficiary affected by the transaction *unless*:

(a) The transaction was authorized by the terms of the trust;

(b) The transaction was approved by the court or approved in a nonjudicial binding agreement in compliance with RCW 11.96A.210 through 11.96A.250;

(c) The beneficiary did not commence a judicial proceeding within the time allowed by RCW 11.96A.070;

(d) The beneficiary consented to the trustee's conduct,

ratified the transaction, or released the trustee in
compliance with RCW 11.98.108; or

(e) The transaction involves a contract entered into or
claim acquired by the trustee before the person became
or contemplated becoming trustee.

...

(4) A sale, encumbrance, or other transaction involving the
investment or management of trust property entered into by
the trustee for the trustee's own personal account that is
voidable under subsection (2) of this section may be voided
by a beneficiary without further proof.

...

Wash. Rev. Code § 11.98.078 (2012) (emphasis added).

Notably, Washington organic law requires no finding of moral
failure or knowledge that his actions violate his fiduciary duties to
find a breach of fiduciary duty. That the trustee acts in violation
of § 11.98.078 is sufficient.

Here, there is issue identity. The Washington state court found
the Stewart transactions with the Decker trust for this own personal
benefit. Wash. Rev. Code § 11.98.078(2),(4) (2012). It found that he
engaged in multiple acts of "self-dealing" and that he "intentionally"
liquidated assets and transferred them to his personal account.
Amended Order Granting Petition for Final Judgment at Pls. Trial Ex. O
2:10-25, *Decker v. Stewart*, No. 20-4-00041-16 (Superior Court Dec. 9,
2020) (describing "self-dealing"). Self-dealing, backed by a finding
of intent, has been found sufficient to satisfy the first prong, bad
faith and/or immoral conduct requirement of *Bullock*. *In re Tomasi*,
No. ADV 10-1446-MT, 2013 WL 4399229, at *10-11 (B.A.P. 9th Cir. Aug.
15, 2013). For these reasons, issue identity exits.

/

/

14

**VI.    CONCLUSION**

For each of these reasons, the motion in limine will be granted in its entirety.  The court will issue an order from chambers.

**Dated:** January 23, 2024

_____

**Fredrick E. Clement**
**United States Bankruptcy Judge**

15

# Instructions to Clerk of Court

### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| Attorneys for the Plaintiff(s) | Defendant(s) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | **Office of the U.S. Trustee**<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA  95814 |